Commonwealth *v.* Adams, Appellant.

Submitted March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Sanford A. Krevsky*, Assistant Public Defender, and *Richard D. Walker*, Public Defender, for appellant.

*Richard A. Lewis* and *Marion E. MacIntyre*, Deputy District Attorneys, and *LeRoy S. Zimmerman*, District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 24, 1975:

This is a direct appeal from a judgment of sentence imposed after a jury conviction on a charge of possession

of a controlled substance.[1] For the reasons stated hereinafter, we affirm the judgment below.

The facts which the hearing judge accepted as true at the suppression hearing show that on December 4, 1973, Trooper Paul E. Eberts of the Pennsylvania State Police received information from an informant that a crate which contained a quantity of heroin had been sent via Trailways bus by a named individual in New York to a Robert Jones in Harrisburg. The informant gave a detailed description of the exterior of the crate and the addresses which appeared thereon. The Trooper then proceeded to the bus terminal to corroborate the informant's statement that such a crate or package existed. Upon arriving at the bus terminal Trooper Eberts was shown the package which had already been opened, and an open bag containing a white powdered substance which he correctly opined to be heroin was plainly visible. The record does not reveal the circumstances under which the crate was opened and the contraband displayed other than the Trooper's uncontradicted testimony that he did not open the crate and that he did not instruct or request anyone to open the crate.

After this initial inspection, the crate was closed and the Trooper proceeded to a magistrate where he obtained a search warrant for the package. He, with the assistance of other officers, then set up a surveillance of the area awaiting the claimant of the package. Five hours later the appellant, Martin Adams, came to retrieve the crate, stating only that he had come to pick up a package for Robert Jones. After he was given the crate and signed the receipt "Robert Jones" he was placed under arrest.

The appellant argues that the initial observation of the heroin by the Trooper was a warrantless and illegal

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §13, *as amended*, 35 P.S. §780-113 (Supp. 1974-75).

search, the fruits of which should have been suppressed as violative of his fourth amendment rights.

This case falls among those generally categorized under the "plain view doctrine." *See, e.g., Ker v. California,* 374 U.S. 23 (1963). A careful review of these cases demonstrates that two distinct lines of cases are combined in this category. One group of cases involves those situations in which the "view" takes place *after* an intrusion into a constitutionally protected area. Under this line of cases if the original intrusion is justified, such as ·by consent, hot pursuit, warrant or other, objects sighted in plain view will be admissible, *see Ker v. California,* supra, so long as the view was inadvertent. *Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *United States v. Davis,* 461 F.2d 1026 (3d Cir. 1972). For instance, in *Commonwealth v. Lassiter,* 457 Pa. 582, 321 A.2d 902 (1974), a police officer, acting pursuant to an informant's tip, requested and was freely granted admittance into a house. Once inside he saw in plain view a knife which later proved to be a murder weapon. The Court held that "[s]ince his entry into [the] house was legitimized by the owner's invitation, and thus by her consent, his subsequent seizure of the evidence in question was also proper." *Id.* at 588, 321 A.2d at 905. In *Commonwealth v. Davenport,* 453 Pa. 235, 308 A.2d 85 (1973), a suspect after lawfully being arrested in his home requested that he be allowed to dress before being taken to the police station. When an officer accompanied the suspect into a bedroom he observed blood stained clothes which were relevant to the murder charge for which the defendant had been arrested.

In *Commonwealth v. Rota,* 222 Pa. Superior Ct. 163, 292 A.2d 496 (1972), during a legal arrest of a defendant in his apartment, a police officer, in a search incident to that arrest, found an envelope containing drugs. In plain view on a nearby table was an identical envelope which also was seized. This Court, quoting *Coolidge v. New*

*Hampshire,* supra, observed that such a seizure was lawful. In *Commonwealth v. Tatro,* 223 Pa. Superior Ct. 278, 297 A.2d 139 (1972), burglary tools seen as a result of a lawful stop of a car were held admissible. *See Commonwealth v. Clelland,* 227 Pa. Superior Ct. 384, 323 A.2d 60 (1974); *Commonwealth v. Dobkin,* 223 Pa. Superior Ct. 432, 302 A.2d 457 (1973); *United States v. Hood,* 493 F.2d 677 (9th Cir. 1974), *cert. denied,* 419 U.S. 852 (1975) (observation in auto after lawful stop); *United States v. Johnson,* 442 F.2d 1239 (D.C. Cir. 1971) (semble). All of the cases under this aspect of the plain view doctrine reflect the Supreme Court's announcement in *Coolidge v. New Hampshire,* supra, of the dual requirements which must be satisfied before the plain view doctrine may be adopted as justification for the search or seizure: the police officer must lawfully be in position to make the view, and the view itself must be inadvertent. *See United States v. Cooks,* 493 F.2d 668 (7th Cir. 1974); *United States v. Bradshaw,* 490 F.2d 1097 (4th Cir. 1974), *cert. denied,* 419 U.S. 895 (1975); *United States v. Gargotto,* 476 F.2d 1009 (6th Cir. 1973). If the initial intrusion into a constitutionally protected area is not justified, the evidence will not be admissible. *See United States v. Bustamante-Gamez,* 488 F.2d 4 (9th Cir. 1973), *cert denied,* 416 U.S. 970 (1974) (illegal entry); *Wattenburg v. United States,* 388 F.2d 853 (9th Cir. 1968) (trespass and search of area within curtilage of house); *State of Texas v. Gonzales,* 388 F.2d 145 (5th Cir. 1968) (trespass and peering into windows of house). Nor will the plain view doctrine apply in an after-intrusion case if the view is not inadvertent. *United States v. Curran,* 498 F.2d 30 (9th Cir. 1974).

A second line of cases grouped under the plain view doctrine involves situations where the view takes place *before* any intrusion into a constitutionally protected area. These cases are distinguishable from the first line of cases in two respects. First, because no intrusion into

a constitutionally protected area takes place, fourth amendment rights are not involved and the requirement that the view be inadvertent is not applicable. Secondly, the warrantless seizure of evidence cannot be justified by the plain view alone. Thus in *United States v. Lee*, 274 U.S. 559 (1927), when a Coast Guard patrol boat on the high seas approached a rum runner's launch to examine her with a search light, Mr. Justice BRANDEIS could say that "no search on the high seas [was] shown." *Id.* at 563. Nearly half a century later in *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861 (1974), the Court held that an environmental field inspector who had entered the defendant's land to run a visual test on smokestack pollution committed no fourth amendment violation. Noting that the Court was not advised that the inspector had entered land from which the public was excluded and that he only "had sighted what anyone who was near the plant could see in the sky—plumes of smoke," the Court stated that any invasion of privacy "if it can be said to exist, [was] abstract and theoretical." *Id.* at 865.

It is generally held that the mere looking at that which is open to view is not a search. *Commonwealth v. Anderson*, 208 Pa. Superior Ct. 323, 222 A.2d 495 (1966). In *Commonwealth v. DeJesus*, 226 Pa. Superior Ct. 79, 310 A.2d 323 (1973), an officer investigating a complaint against the occupants of a parked car, did not commit a search when he examined the occupants of the car and observed a revolver. In those situations in which no intrusion into a constitutionally protected area occurs, no search is made. *Commonwealth v. Hernley*, 216 Pa. Superior Ct. 177, 263 A.2d 904 (1970). *See Cardwell v. Lewis*, 417 U.S. 583 (1974) (search of exterior of car did not infringe any expectation of privacy); *United States v. Minton*, 488 F.2d 37 (4th Cir. 1973), *cert. denied*, 416 U.S. 936 (1974) (officers on embankment view building 80 feet away); *United States v. Brown*,

487 F.2d 208 (4th Cir. 1973), *cert. denied,* 416 U.S. 909 (1974) (open fields are not constitutionally protected areas) ; *United States v. Various Gambling Devices,* 478 F.2d 1194 (5th Cir. 1973) (observation made in building open to the public).

The second distinction in this line of cases is that the warrantless seizure of evidence cannot be justified by the plain view alone. This was clearly stated in *Coolidge v. New Hampshire,* supra. "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence ... [E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Id.* at 468 (emphasis original). Thus, in those cases in which the view precedes an intrusion into a constitutionally protected area the officer must be able to rely upon exigent circumstances, *see Commonwealth v. DeJesus,* supra, or he must obtain a warrant before he seizes the evidence. *See, e.g., State v. Brown,* 1 Or. App. 322, 461 P.2d 836 (1969) (officer observed marijuana growing in open view in greenhouse) ; *People v. Bradley,* 1 Cal.3d 80, 460 P.2d 129, 81 Cal. Rptr. 457 (1969) (officer observed marijuana plant growing under tree in defendant's yard). This rule is contrary to the rule in the after-intrusion line of cases. In those cases because the justifiable intrusion already has occurred, no further intrusion is occasioned by the seizure of evidence which is in plain view and the seizure is permitted without more. *See Ker v. California,* supra. In the pre-intrusion view cases no intrusion is occasioned by the view and the intrusion necessary to seize evidence must be justified by a warrant or one of the exceptions to the warrant requirement. *See Coolidge v. New Hampshire,* supra.

Returning to the facts of the present case, the seminal question in determining the legality of the initial view is whether in making that view the officer intruded upon a constitutionally protected area. It is clear that "wherever

an individual may harbor a reasonable 'expectation of privacy,' . . . he is entitled to be free from unreasonable governmental intrusion." *Terry v. Ohio,* 392 U.S. 1, 9 (1968). "What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area. . . ." *Hoffa v. United States,* 385 U.S. 293, 301 (1966). It is also clear that the fourth amendment protects people not places and any time during which a person holds a reasonable expectation of privacy from governmental intrusion he is clothed with the protective garments of the fourth amendment. Under the facts of this case we cannot find the exercise of any governmental power intruding upon any right protected by the fourth amendment. *See Lewis v. United States,* 385 U.S. 206 (1966). The fourth amendment unquestionably protects against governmental intrusion upon "the sanctity of a man's home and the privacies of life," *Boyd v. United States,* 116 U.S. 616, 630 (1886), but to hold that an individual may harbor reasonable expectations of privacy as to the existence and appearance[2] of a package sent by commercial transport strains the fabric into which such an important and fundamental constitutional right was woven.

A package travelling on commercial thoroughfares has little capacity for escaping public notice, *cf., Cardwell v. Lewis,* supra (automobile), and its observation is certainly far less intrusive than a search of one's person or effects. *Cf. Almeida-Sanchez v. United States,* 413 U.S. 266 (1973) (POWELL, J., concurring) (automobile). Persons who place packages in the stream of commercial transportation have no reasonable expectation of privacy that records of the transaction will not be made. It is, in fact, well known that such records are kept. *Cf. United*

_____

2. We emphasize that under the facts with which we must operate the officer did not intrude into the integrity of the package itself. Had he done so our result most certainly would be otherwise. *See Commonwealth v. Dembo,* 451 Pa. 1, 301 A.2d 689 (1973).

*States v. Clegg,* 509 F.2d 605 (5th Cir. 1975) (records of telephone calls).

The courts "have consistently held that a law enforcement officer may enter commercial premises open to the public and observe what is in plain view." *United States v. Various Gambling Devices,* supra, at 1200. *See Borum v. United States,* 318 A.2d 590 (D.C. Ct. App., 1974) (observation made through partially open hotel room door). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351 (1967) ; *see Air Pollution Variance Bd. v. Western Alfalfa Corp.,* supra. In the instant case we fail to comprehend what expectation of privacy was infringed. It is evident that no interest legitimately protected by the fourth amendment was involved and no right protected by the fourth amendment was violated.

Moreover, any search which was committed in this case was performed by someone other than the police officer. The proscriptions of the fourth amendment were designed to protect an individual from arbitrary or oppressive governmental action, and its limitations do not extend to searches conducted by a private citizen. *Byars v. United States,* 273 U.S. 28 (1927); *Burdeau v. McDowell,* 256 U.S. 465 (1921) ; *Commonwealth v. Dingfelt,* 227 Pa. Superior Ct. 380, 323 A.2d 145 (1974). It is clear in this case that the police did not request the search, participate in it, or exercise any control over the object while it was searched. *See Cash v. Williams,* 455 F.2d 1227 (6th Cir. 1972); *Corngold v. United States,* 367 F.2d 1 (9th Cir. 1966) ; *United States v. Issod,* 370 F. Supp. 1110 (E.D. Wis. 1974). Therefore, the conduct of the police officer in initially viewing the heroin was neither objectionable nor unlawful.

Appellant also objects that the search warrant was defective in that it failed to meet the requirements of *Aguilar v. Texas,* 378 U.S. 108 (1964). However, in view

of our holding above that the initial observation of the heroin was lawful, we need not reach this question. The search warrant was unnecessary and the contraband lawfully could be seized incident to the arrest of the appellant. *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A.2d 249 (1966). The lawful observation of the heroin coupled with the officer's personal observation of the appellant picking up the package provided probable cause for the arrest and the search and seizure incident thereto was lawful. *See, e.g., Chimel v. California,* 395 U.S. 752 (1969) ; *Commonwealth v. Reece,* 437 Pa. 422, 263 A.2d 463 (1970).

Appellant also contends that the district attorney committed prejudicial error in closing argument by referring to the appellant's failure to testify. The remarks were not recorded but a record was made of the objection and its attendant colloquy. In *Commonwealth v. King,* 227 Pa. Superior Ct. 168, 323 A.2d 260 (1974) we held that the court should direct the stenographer to place upon the record the court's understanding of the remarks. The court below followed this procedure and we find only a remark that "the jury was to consider only the evidence they heard from the witness stand." We cannot find this remark objectionable. *Cf. Commonwealth v. Henderson,* 456 Pa. 234, 317 A.2d 288 (1974). If defense counsel disagreed with the court's interpretation or statement of the remark, the proper procedure would have been for him to place his understanding of the remark in the record by way of affidavit. *Commonwealth v. King,* supra.

Appellant lastly contends that the verdict was against the weight of the evidence. Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973), and accepting as true all the evidence and all reasonable inferences deducible therefrom, *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974), the verdict was not against the weight of the evidence. "While presence

in the vicinity of illegal drugs by itself does not prove the crime of possession ... knowledge of the presence of contraband and intent to exercise control can be inferred from the totality of the circumstances, of which presence is a factor." *Commonwealth v. Carter*, 230 Pa. Superior Ct. 236, 239, 326 A.2d 480, 482 (1974) (citations omitted).

Judgment affirmed.

CERCONE, J., concurs in the result.