502 A.2d 221

**COMMONWEALTH of Pennsylvania**

v.

**Joseph D. TARBERT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1985.

Filed Dec. 6, 1985.

308

William H. Poole, Jr., York, for appellant.

Thomas L. Kearney, Assistant District Attorney, York, for Com., appellee.

Before WICKERSHAM, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of York County. Appellant, Joseph D. Tarbert, was arrested and charged with driving under the influence of alcohol. Following a trial by jury, appellant was convicted of the charged crime. Timely post-verdict motions were filed and denied. Tarbert was sentenced to thirty days to twelve months imprisonment, a $500.00 fine, and to pay the costs of prosecution. We reverse.

In the early morning hours of July 30, 1983, the York Township Police Department established a roadblock on a county road, at which all vehicles proceeding in each direction were stopped. The operators of the stopped vehicles were asked to produce their licenses and owner's cards. The officers involved in the operation made a physical examination of each automobile to determine whether any inspection violations were present. Each motorist was carefully observed to ascertain whether he was under the influence of alcohol.

Tarbert's van was stopped at the roadblock site. The officer who stopped appellant testified that he noticed the odor of alcohol coming from the vehicle. As a result, several field sobriety tests were administered, and appellant was placed under arrest. A subsequent breathalyzer test resulted in a .12 reading. Appellant filed a pre-trial suppression motion based upon a lack of probable cause to stop his vehicle. The motion was denied.

We are asked to pass upon the constitutionality of police roadblocks, which, without probable cause or a reasonable suspicion that a crime has been or is being committed, stop

all vehicles travelling on a public highway for the purposes of checking licenses, registrations, inspection violations, and for drivers operating vehicles under the influence of alcohol.

# I

## ADEQUATE AND INDEPENDENT STATE GROUNDS

Initially, we are compelled to note that our decision today is based entirely upon the Constitution of the Commonwealth of Pennsylvania. Any reliance on federal cases is only for the purpose of guidance, with these cases not compelling the result reached. *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). We intend to clearly and expressly indicate that our decision rests "on bona fide, separate, adequate, and independent [state] grounds ..." *Id.*

# II

## A. CONSTITUTIONAL FRAMEWORK

■ Embodied in any state constitutional analysis is the power of a state to guard an individual's rights more zealously than that mandated by the Federal Constitution. *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983); *Kroger Co. v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978); *In re Gartley*, 341 Pa.Super. 350, 491 A.2d 851 (1985); *Western Pennsylvania Socialist Workers v. Connecticut General Life Insurance Co.*, 335 Pa.Super. 493, 485 A.2d 1 (1985). "[A] state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution, and that the rights so guaranteed may be more expansive than their federal counterparts." *Commonwealth v. Tate*, 495 Pa. 158, 169, 432 A.2d 1382, 1387 (1981). One commentator has characterized the function of a state constitution as "a second line of defense for those rights protected by the federal constitution and as an independent source of supplemental rights unrecognized by federal law." Note,

*The Interpretation of State Constitutional Rights*, 95 Harv.L.Rev. 1324, 1367 (1982), *quoted with approval in Commonwealth v. Beauford*, 327 Pa.Super. 253, 263, 475 A.2d 783, 788 (1984). Indeed, Pennsylvania courts interpreting our Constitution have not hesitated in "affording greater protection to defendants than the federal Constitution." *Commonwealth v. Sell*, 504 Pa. at 64, 470 A.2d at 467. *See e.g., Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979) (waiver of *Miranda* rights requires an explicit waiver; *contra North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)); *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (police cannot gain access to banking records without a warrant based on probable cause; *contra Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975) (statements of a defendant declared inadmissible by suppression court cannot be used for impeachment purposes; *contra Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)); *Commonwealth v. Beauford, supra* (use of a pen register requires a warrant based upon probable cause; *contra Smith v. Maryland, supra* ).

"Article 1 [of the Pennsylvania Constitution] is entitled 'Declaration of Rights' and all of the first twenty-six sections of *Article 1 which states those specific rights, must be read as limiting the powers of government to interfere with the rights provided therein.*" *Commonwealth v. National Gettysburg Battlefield Tower, Inc.*, 454 Pa. 193, 200, 311 A.2d 588, 592 (1973) (emphasis added). The fundamental rights delineated by our Constitution serve as "commands to the legislature to enact laws to carry out the purposes of the framers of the Constitution, [and may act as] ... restrictions upon the power of the legislature to pass laws." *O'Neill v. White*, 343 Pa. 96, 99, 22 A.2d 25, 26 (1941) (citation omitted).

Perhaps a most basic example of a provision evidencing a deep-rooted fundamental right recognized by the framers of our Constitution can be found in Section 8 of Article 1.

## § 8. Security from searches and seizures

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

This right, also acknowledged in the Federal Constitution, "safeguard[s] the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). *Accord Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). So important is the right guaranteed by Section 8, that it has been held to extend "beyond the home to protect the individual against unwarranted government intrusions into any area where the individual may harbor a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Commonwealth v. Morrison,* 275 Pa.Super. 454, 418 A.2d 1378 (1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *Commonwealth v. Gabrielle,* 269 Pa. Super. 338, 409 A.2d 1173 (1979); *Commonwealth v. Adams,* 234 Pa.Super. 475, 341 A.2d 206 (1975)." *Commonwealth v. Beauford,* 327 Pa.Super. at 261–62, 475 A.2d at 787.

To achieve the ends sought by our constitutions, the proscriptions contained in the Fourth Amendment and in Section 8 of Article 1 of our Constitution "impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents...." *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Consequently, any encroachment upon one's privacy rights by "a particular law enforcement practice [must be] judged by balancing its intrusion on the individual's Fourth Amendment [and Sec-

tion 8] interests against promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. at 1396 (footnote omitted).

## B. ROADBLOCKS

Dicta from the United States Supreme Court's decision in *Delaware v. Prouse, supra,* is the foundation for many state courts finding roadblocks such as the one in this case constitutional. However, no court has adopted a per se rule of constitutionality. Rather, these courts hold that, only where the efficacy of the roadblock in achieving increased safety and minimal intrusion upon society's rights are both shown by the state, can a seizure at a roadblock pass constitutional muster.

■ Our analysis of the issue *sub judice* begins with the notion that "[a]n automobile is a place where an individual has a reasonable expectation of privacy." *Commonwealth v. Swanger,* 453 Pa. 107, 111, 307 A.2d 875, 877 (1973). When a vehicle is stopped by a police officer and its occupants are detained, a seizure within the meaning of the Fourth Amendment and Section 8 has occurred. *Id. See also Delaware v. Prouse, supra; United States v. Martinez—Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Commonwealth v. Berry,* 305 Pa.Super. 8, 451 A.2d 4 (1982). *Cf., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Prouse* involved a random stopping of motor vehicles to check an occupant's license and the vehicle's registration. The Supreme Court held that,

except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 663, 99 S.Ct. at 1401. In dicta contained in the next two sentences of the decision however, the Court, in essence, "signaled to local authorities that they could still stop vehicles absent *any* articulable suspicion of wrongdoing, so long as the haphazard stopping was replaced by a systematic and controlled alternative." Rogers, *The Drunk-Driving Roadblock: Random Seizure or Minimal Intrusion?*, 21 Crim.L.Bulletin 197 (1985) (hereinafter cited as Rodgers) (emphasis in the original). The Court stated: "Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." 440 U.S. at 663, 99 S.Ct. at 1401.

What troubled the Court most in the scenario presented by *Prouse* was the use of "unbridled discretion" by the police in stopping an automobile. *Id.* The Court noted other alternative means of fostering the state's interest in highway safety, 440 U.S. at 659, 99 S.Ct. at 1399, and that the "marginal contribution" of spot checks could not justify the magnitude of the intrusion upon an individual. *Id.* at 661, 99 S.Ct. at 1400. Without probable cause or some "articulable basis amounting to reasonable suspicion" to believe there is a violation of the motor vehicle law, the Court could not "conceive any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver." *Id.* With this conclusion, we are in total agreement.

■ Six years prior to the *Prouse* decision, our Supreme Court was faced with the question of random stops in Pennsylvania. In *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), the Court held that in order to stop a single vehicle to check compliance with the Motor Vehicle Code, a police officer "must have probable cause based on specific facts which indicate to him either the vehicle or the driver are in violation of the code." *Id.*, 453 Pa. at 115, 307 A.2d at 879. We can find no compelling reason to deviate from this rule in situations involving a systematic stopping of vehicles.

The intrusion upon the individual in systematic stops is no less an intrusion because of the mere fact that all vehicles travelling on the highway are stopped. While the discretion of the police officer is limited to a degree, we cannot sanction "random seizures based on 'luck and hunch' alone ... which inconvenience citizens without any justification of substance." *State v. Kirk,* 202 N.J.Super. 28, 58, 493 A.2d 1271, 1288 (1985) (citations omitted). In short, systematic and random roadblocks are nothing more than fishing expeditions which "constitute police seizure and detention in the absence of the faintest scintilla of criminal wrongdoing." Rogers, *supra* at 214.

As noted *supra,* states that have grappled with the roadblock issue have unjustifiably avoided adopting a per se rule. It is apparent that the courts of these states also are not viewing the dicta of *Prouse* as a hard and fast rule for all roadblocks.

In *State v. Kirk, supra,* the New Jersey Superior Court surveyed the decisions of many state courts and found a common theme running throughout the cases.

If the road block was established by a command or supervisory authority and was carefully targeted to a designated area at a specified time and place based on data justifying the site selection for reasons of public safety and reasonably efficacious or productive law enforcement goals, the road block will likely pass constitutional muster. Other factors which enhanced judicial approval were (1) adequate warnings to avoid frightening the travelling public, (2) advance general publicity designed to deter drunken drivers from getting into cars in the first place, and (3) officially specified neutral and courteous procedures for the intercepting officers to follow when stopping drivers. Simply sending out officers to set up road blocks when and where they felt like it, without any command participation as to site, time and duration, and not based on articulated and rational law enforcement needs which justified the balance in favor of

intrusion and outweighed the privacy, is a technique which has not survived constitutional scrutiny very well. *Kirk,* 202 N.J.Super. at 40–41, 493 A.2d at 1277–78.

What we can discern from these cases is a concern "over the unregulated discretion of field officers." Rogers, *supra* at 203. As a result, a number of courts have concluded that in the absence of factors indicating careful control and minimal discretion by police officers, the use of roadblocks is violative of the Fourth Amendment. *See e.g., State ex rel. Ekstrom v. Justice Court,* 136 Ariz. 1, 663 P.2d 992 (1983); *Jones v. State,* 459 So.2d 1068 (Fla.Dist.Ct.App. 1984); *People v. Bartley,* 125 Ill.App.3d 575, 80 Ill.Dec. 894, 466 N.E.2d 346 (1984); *State v. McLaughlin,* 471 N.E.2d 1125 (Ind.App.1984); *Commonwealth v. McGeoghegan,* 389 Mass. 137, 449 N.E.2d 349 (1983); *State v. Olgaard,* 248 N.W.2d 392 (S.D.1976); *Koonce v. State,* 651 S.W.2d 46 (Tex.App.1983). The intrusion upon the individual's right of privacy outweighs the government's interests in highway safety in this situation.

Courts upholding the constitutionality of roadblocks are not unmindful of their intrusiveness, but rather, stress that careful control and absence of discretion can bring the use of the roadblock within the Fourth Amendment. *See e.g., State v. Golden,* 171 Ga.App. 27, 318 S.E.2d 693 (1984); *People v. Long,* 124 Ill.App.3d 1030, 80 Ill.Dec. 332, 465 N.E.2d 123 (1984); *State v. Garcia,* 481 N.E.2d 148 (Ind. App.1985); *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983); *Kinslow v. Commonwealth,* 660 S.W.2d 677 (Ky.Ct. App.1983); *State v. Shankle,* 58 Or.App. 134, 647 P.2d 959 (1982); *State v. Marchand,* 37 Wash.App. 741, 684 P.2d 1306 (1984).

While the arguments supporting the constitutionality of systematic roadblocks are persuasive, the rationale supporting them is flawed. No amount of control or limited discretion can justify the "seizure" that takes place in the complete absence of probable cause or reasonable suspicion that a motor vehicle violation has occurred. Certainly the Constitution of our Commonwealth affords its citizens the

right to be free from intrusions where one has a reasonable expectation of privacy.

An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion, every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio, supra*, recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Prouse*, 440 U.S. at 662–63, 99 S.Ct. at 1400–01.

We hold that police roadblocks, which, without probable cause or a reasonable suspicion that a crime has been or is being committed, stop all vehicles travelling on a public highway for the purposes of checking licenses, registrations, inspection violations, and for drivers operating vehicles under the influence of alcohol are so violative of our citizen's rights that they must be declared unconstitutional.

■ Consequently, appellant's conviction is reversed and the case is remanded to the trial court for proceedings consistent with this opinion. Jurisdiction is relinquished.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

I dissent. I would recognize the validity of non-discriminatory, non-arbitrary roadblocks. *See Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Delaware v.*

*Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). I read nothing in the Pennsylvania Constitution that calls for a different interpretation than that espoused by our United States Supreme Court in the above cited cases.

I would also note that the state legislature has recently passed amendments to Title 75 of the Pennsylvania Motor Vehicle Code which authorize "systematic vehicle inspection programs," 75 Pa.C.S. § 4704(A)(2) (as amended 1985, June 19, P.L. ——, No. 20, § 5, effective in 60 days)[1] and which give authority to police officers who are "engaged in a systematic program of checking vehicles or drivers" to "stop a vehicle ... for the purpose of checking the vehicle's registration ... or [a] driver's license...." 75 Pa.C.S. § 6308(b) (as amended 1985, June 19, P.L. ——, No. 20, § 10, effective in 60 days),[2] without the requirement of articulable and reasonable grounds to suspect a violation of the code.

In conclusion, I would find non-discriminatory, non-arbitrary roadblocks valid under the Pennsylvania Constitution;

1. The new amendment to 75 Pa.C.S. § 4704(A)(2) reads:
 § 4704. Inspection by police or [Department] Commonwealth personnel.
 (A) Authority To Inspect
 (2) Systematic vehicle inspection programs.—Any Pennsylvania State Police Officer or qualified Commonwealth employee engaged in a systematic vehicle inspection program may inspect any vehicle, driver, documents, equipment and load to determine whether they meet standards established in department regulations. (Underscored material is added, bracketed material is deleted).

2. The new amendment to 75 Pa.C.S. § 6308(b) reads:
 § 6308. Investigation by police officers.
 * * * * *
 (B) Authority of police officer.—Whenever a police officer is engaged in a systematic program of checking vehicle or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of [inspecting the vehicle as to its equipment and operation, or] checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title. (Underscored material is added, bracketed material is deleted).

318

accordingly I would affirm the judgment of sentence in the case *sub judice.*