## Commonwealth v. Condella

*Maureen Flynn, assistant district attorney,* for the Commonwealth.
*James C. Blackman,* for defendant.

WOLFE, *P.J.,* February 11, 1992—Defendant was charged on September 21, 1991, with operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving (75 P.S. §3731(a)(1)) of the Pennsylvania Motor Vehicle Code.

The charge was occasioned by reason of a sobriety checkpoint operated by the Pennsylvania State Police on State Route 60 about one mile south of Sugar Grove Borough in the township of Sugar Grove, Warren County. A checkpoint stop was implemented by six officers plus two supervisors and was done in accordance with a "traffic safety checkpoint" procedure issued by the Pennsylvania State Police.

The sobriety checkpoint commenced at approximately 10 p.m. At 12:50 a.m. Trooper Richard Barnes of the Pennsylvania State Police observed the defendant's vehicle approaching the checkpoint as it came to a stop in accordance with the sign erected. The trooper testified defendant stopped his vehicle at the checkpoint, and then as the officer was approaching defendant's vehicle it moved farther ahead and stopped again. The officer noted a smell of alcohol on defendant's breath and requested him to exit his vehicle. The officer stated defendant had difficulty in walking, had to balance himself against the car as he walked toward the shoulder of the road, and he staggered on the shoulder and hit his foot against a portable overhead light and almost fell. Defendant's speech was slightly slurred, and his eyes were bloodshot and had a glassy appearance. Defendant was given the horizontal-gaze-nystagmus test, a walk and turn test, and a one-legged stand test. In the officer's opinion the defendant failed these field sobriety examinations.

Defendant does not attack the constitutionality of sobriety checkpoints, nor could he. *Michigan Dept. of State Police v. Sitz*, 110 S.Ct. 2481 (1990), holding Michigan's highway sobriety checkpoint program, under which all vehicles passing through the checkpoint were stopped and their drivers briefly examined for signs of intoxication, did not violate the Fourth Amend-

ment under an attack of search and seizure. The Michigan guidelines required the sobriety checkpoint to be in place at selected sites, and all vehicles passing through the checkpoint would be stopped. The court held a brief delay of an average of 25 seconds outbalanced the interest of the state in curbing the slaughter on our highways by the intoxicated driver. In our Commonwealth our Supreme Court in *Commonwealth v. Tarbert,* 348 Pa. Super. 306, 502 A.2d 221 (1985), also found sobriety checkpoints to be not in violation of the citizen's constitutional rights, provided that such roadblocks are conducted in a systematic manner within certain prescribed parameters. Our statute (75 Pa.C.S. §6308(b)), permits a police officer, engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of the Vehicle Code, may stop a vehicle upon request or signal for the purpose of checking the operator for compliance. This statute, effective August 19, 1985, was interpreted in *Commonwealth v. Fioretti,* 371 Pa. Super. 535, 538 A.2d 570 (1988), to authorize the police to establish sobriety checkpoint roadblocks.

The *Fioretti* court determined the appropriate guidelines for implementing a sobriety roadblock, stating it must require only a momentary stop to allow the police to make a brief examination of the operator without a physical search, must structure the roadblock to give approaching vehicles reasonable notice of its existence in terms of view; the procedure must have prior administrative approval to remove discretion from the police officers in the field; the route selected must be based on local experience that it is likely to be traveled by intoxicated drivers; and the question of which vehicles to stop should not be left to the discretion of

a police officer at the scene but must be in accordance with objective standards set by prior administrative decision. The court found all cars were stopped, hence removing the discretion from the police officers working the checkpoint, and "the only discretion exercised by the police would be in deciding whether to discontinue the checkpoint if traffic backed up."

In regard to traffic becoming congested and causing a great inconvenience to the traveling public, the court, in *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987), held:

"A sign indicating that the motorist is about to be stopped and suggesting the nature of the stop may provide advance warning of the roadblock. Furthermore, checkpoint operations usually are marked by flashing lights, police vehicles and the presence of uniformed officers. Field officers conducting the roadblock may stop all traffic, or they may use other neutral formulae for deciding which vehicles to stop. For example, the officers might detain every fifth or tenth car that approaches the roadblock. Additionally, officers may wave back-up traffic through the roadblock if the traffic stoppage poses safety problems."

The checkpoint formula utilized by the police in the instant case provides:

"(3) When conditions permit, all vehicles approaching the checkpoint shall be stopped; however, any articulable, systematic, predetermined method for stopping vehicles may be utilized, e.g. stopping every fifth vehicle. The pre-determined method shall not be abandoned or modified by other members and shall be entered in the 'remarks' section of the traffic safety checkpoint report. In addition, any change to the predetermined method shall be justified and documented.

"(4) If a backup of traffic which causes an unnecessary inconvenience to motorists occurs, activities shall immediately cease, allowing traffic to proceed through the checkpoint until the congestion is relieved."

Here, defendant argues the police did not follow a "systematic" procedure in violation of its policy and contrary to the foregoing cases authorizing sobriety checkpoints in that Trooper Barnes indiscriminately at different times would wave backup congestion through the roadblock without making even a cursory observation of the operator, and when the congestion diminished would again institute a stop and examination of the operators.

Trooper Barnes, in fact, agreed this was his authorized procedure on September 22, 1991, and stated that although all cars approaching the roadblock had to stop; nonetheless, he would wave vehicles through without regard to the number; "There is no number, it's when it is going to be a big inconvenience to the people who are in the cars, making them wait until they finally get up and you have to get and let them through." The officer stated by this system some people go through without being stopped again when there is congestion. It is thus defendant's argument defendant was unconstitutionally stopped and examined by the officer, whereas other operators were not, and hence an unequal standard constitutionally flawing the sobriety checkpoint existed on the night in question.

We are compelled to disagree. We are of the opinion defendant's interpretation of procedure is misunderstood in that, first, all vehicles are in fact stopped as they approach the checkpoint. The fact that many are then

waved through the checkpoint when congestion occurs does not flaw the system. Neither *Tarbert* nor *Fioretti* require an examination of all operators irrespective of congestion; indeed, these cases authorize the officers to wave through the vehicles causing the congestion and then after congestion is cleared to again commence the procedure. So, too, there is no requirement that a definite number of vehicles be waved through before the procedure is again commenced.

We recognize this procedure of "waving through" congested traffic is the luck of the draw for some intoxicated drivers who happen along during the congested period, while another drinking driver goes through a personal examination. Nonetheless, in keeping with balancing the constitutional right of the public to travel our highways without a search and seizure system instituted by the police against the right of the safety of other members of the traveling public against being killed or seriously injured by the drunken driver, the system in place, although not perfect in examining each operator, nonetheless curtails and apprehends the unsafe drinking driver.

We therefore conclude the system utilized by the police to apprehend defendant was in accordance with the prior police policy, was systematically implemented, and defendant's constitutional rights were not in violation. We therefore enter the following order:

## ORDER

And now, February 11, 1992, defendant's petition to suppress the incriminating evidence gathered by the police at the sobriety checkpoint is denied.