J-A03009-17

2017 PA Super 351

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| JEFFERY CHARLES MAGUIRE | | |
| Appellee | | No. 654 MDA 2016 |

Appeal from the Order Entered March 22, 2016
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000396-2015

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

DISSENTING OPINION BY LAZARUS, J.:        **FILED NOVEMBER 08, 2017**

I respectfully dissent. I find that the commercial vehicle inspection stop at issue was subject to the **Tarbert**/**Blouse**[1] guidelines, albeit on different grounds than the suppression court, and the inspection program here was not in substantial compliance with those guidelines. Therefore, the stop of Maguire's vehicle was unlawful, and I would affirm the suppression court's order.[2]

As the majority properly notes, the only evidence the Commonwealth presented at the suppression hearing was Trooper Beaver's uncontradicted

---

[1] **Commonwealth v. Tarbert**, 535 A.2d 1035 (Pa. 1987) (plurality); **Commonwealth v. Blouse**, 611 A.2d 1177 (Pa. 1992).

[2] **See Commonwealth v. Williams**, 35 A.3d 44, 47 (Pa. Super. 2011) (this Court can affirm lower court's decision if there is any basis to support it, even if we rely on different grounds).

testimony. Thus, since no facts are in dispute, the question presented is purely one of law and our standard of review is *de novo*. ***Commonwealth v. Beaman***, 880 A.2d 578, 581 (Pa. 2005); ***see also Commonwealth v. Guzman***, 44 A.3d 688, 691–92 (Pa. Super. 2012).

In his motion to suppress, Maguire claimed the systematic checkpoint did not comply with the guidelines set forth in ***Commonwealth v. Tarbert***, 535 A.2d 1035 (Pa. 1987) (plurality), and adopted by a majority of the Supreme Court in ***Commonwealth v. Blouse***, 611 A.2d 1177 (Pa. 1992).

> [T]o be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

***Commonwealth v. Worthy***, 957 A.2d 720, 725 (Pa. 2008), citing ***Blouse***, *supra*, and ***Tarbert***, *supra*. "Substantial compliance with the ***Tarbert***/***Blouse*** guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." ***Commonwealth v. Yastrop***, 768 A.2d 318, 323 (Pa. 2001). However, where police do not comply with the guidelines in establishing a checkpoint, the trial court should suppress evidence derived from the stop, including the

results of field sobriety and blood alcohol testing. *See Commonwealth v. Blee*, 695 A.2d 802, 806 (Pa. Super. 1997).

The suppression court, relying on this Court's en banc decision in *Commonwealth v. Garibay*, 106 A.3d 136 (Pa. Super. 2014), concluded that the *Tarbert*/*Blouse* guidelines applied to commercial vehicles when setting up DUI and non-DUI checkpoints. In *Garibay*, the City of Pittsburgh set up a checkpoint as part of the Pennsylvania Department of Transportation's "Click It or Ticket" program, which was designed to ensure compliance with seatbelt requirements. When Garibay's vehicle was stopped at the checkpoint, police suspected he was under the influence of marijuana due to his failure to respond, his trance-like state, and "a particularly pungent odor of marijuana emanating from his person and his vehicle." *Id.* at 137. Garibay was arrested for DUI; a search incident to the arrest yielded a white porcelain pipe in Garibay's front jacket pocket.

Garibay was charged with DUI, possession of drug paraphernalia and two vehicle–related summary offenses. He filed a motion to suppress, alleging police did not comply with the *Tarbert*/*Blouse* guidelines for checkpoint stops. Following a hearing, the court denied the motion to suppress. On appeal, this Court vacated the judgment of sentence, holding that the existing *Tarbert*/*Blouse* standards applied to non-DUI checkpoints, and that the Commonwealth failed to present evidence that the checkpoint complied with those standards. *Id.* at 143.

Here, the suppression court found that the inspection checkpoint at issue did not comply with those standards, in particular the fifth criterion that checkpoint stops must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene. The suppression court relied on this Court's decision in **Garibay**, stating: "In **Garibay**, the Superior Court made no distinction or exceptions for commercial vehicles." Suppression Court Opinion, 5/12/16, at 2. However, contrary to the suppression court's interpretation, and Maguire's argument, that issue was not presented in **Garibay**.

**Garibay** involved a Dodge Caravan and a non-DUI/seatbelt safety checkpoint, and we held that the **Tarbert**/**Blouse** standards applied to non-DUI checkpoints as well as DUI checkpoints. There was no mention of the application of the **Tarbert**/**Blouse** standards to commercial vehicles. **Garibay**, **supra**; **see also In re: J.A.K.**, 908 A.2d 322 (Pa. Super. 2006) (non-DUI vehicle checkpoint for seat belt and child seat violations complied with procedural requirements and was not controlled by arbitrary discretion of police officers).

The question, then, is whether there is any reason to find that the **Tarbert**/**Blouse** guidelines would not apply to a commercial vehicle non-DUI checkpoint. The Commonwealth argues, and the majority finds, that the standards do not apply because commercial vehicle inspections fall within the highly regulated industry exception to the warrant requirement, and, thus,

commercial vehicle inspections made pursuant to section 4704 are not governed, or contemplated by, the *Tarbert/Blouse* guidelines.

The United States Supreme Court has recognized an exception to the warrant requirement for administrative inspections in "closely regulated" businesses. *New York v. Burger*, 482 U.S. 691, 693 (1987). There, the Court defined the characteristics of an administrative search that validly circumvents the warrant requirement. The Commonwealth correctly asserts, and the majority correctly finds, that trucking is a closely regulated industry. *See Commonwealth v. Petroll*, 738 A.2d 993 (Pa. 1999).[3] Administrative checkpoint inspections, therefore, are not subject to the warrant requirement.[4]

---

[3] As our Supreme Court noted in *Petroll*, state and federal regulations require drivers of commercial vehicles to maintain and possess a logbook; the logbook details various information, including the driver's daily time and mileage of travel for one week. *See* 67 Pa. Code § 229.343; 49 C.F.R. § 395.8. *See also* 75 Pa.C.S.A. § 6103(c) (authorizing PennDOT to adopt federal statutes or regulations relating to vehicles or drivers). The Commonwealth has adopted the federal rule setting a maximum time allowable for commercial driving. *See* 67 Pa. Code § 229.341; *see also* 49 C.F.R. § 395.3 (establishing driving time limits). *Petroll*, 738 A.2d at 1002. *See also Commonwealth v. Pollock*, 606 A.2d 500, 506 (Pa. Super. 1992); *Commonwealth v. Berry*, 451 A.2d 4, 6–7 (Pa. Super. 1982); 75 Pa.C.S.A. § 4701 *et seq*.

[4] Non-commercial vehicles, like commercial vehicles, are also heavily regulated. "Automobiles, unlike homes, are subject to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements." *Tarbert*, 535 A.2d at 1038, quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).

In the context of a pervasively regulated business, a warrantless inspection is reasonable if three criteria are met:

First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made[.] Second, the warrantless inspection must be necessary to further [the] regulatory scheme[.] Finally, the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

**Petroll**, 738 A.2d at 578-79, quoting **Burger**, 482 U.S. at 702–703 (citations and quotations omitted) (emphasis added)*. **See Commonwealth v. Hudak**, 710 A.2d 1213 (Pa. Super. 1998) (discovery of evidence of crimes in course of enforcing otherwise proper administrative inspection does not render search illegal or administrative scheme suspect), citing **Petroll**, **supra**, and **Burger**, **supra**.

The Commonwealth argues:

Trooper Beaver was within his duties and requirements as a certified commercial motor vehicle inspector to stop Maguire's commercial vehicle for a safety inspection at the Clinton County Landfill on May 20, 2015. *Because the initial stop of Maguire's commercial vehicle was a lawful administrative search/commercial vehicle inspection not designed to investigate criminal activity, the closely regulated industry exception to the warrant requirement allowed Trooper Beaver to detain Maguire and collect evidence related to a suspected DUI after he had probable cause to believe Maguire was operating his vehicle under the influence of alcohol*. In other words, Trooper Beaver did not stop Maguire's commercial vehicle to investigate whether Maguire had been drinking and driving, but once he detected alcohol on

> Maguire's breath, the closely regulated industry exception allowed him to detain Maguire and search and seize relevant evidence.

Commonwealth's Brief, at 22-23 (emphasis added).

This argument misses the mark; the Commonwealth's focus on the purpose of the stop is beside the point. During a systematic vehicle inspection, an officer may detain a driver suspected of DUI and search and seize relevant evidence. That presumes, however, that the administrative stop was lawful. Here, the Commonwealth makes that assumption when in fact the question of whether the administrative stop was "lawful" is the precise issue before this Court.

A commercial vehicle safety inspection must comply with section 4704 of the Vehicle Code, which provides the authority for a warrantless inspection. Section 4704 states:

> **(a) Authority to inspect.--**
>
> * * *
>
> (2) Systematic vehicle inspection programs.-- Any Pennsylvania State Police officer or qualified Commonwealth employee engaged in a ***systematic vehicle inspection*** program may inspect any vehicle, driver, documents, equipment and load to determine whether they meet standards established in department regulations.

75 Pa.C.S.A. § 4704(a)(2) (emphasis added). Pursuant to section 4704(a)(2), state officials may execute a systematic vehicle inspection program in order to "remove unsafe vehicles from the roadways before an accident occurs." ***Petroll***, 738 A.2d at 1003. This is the same rationale behind section 6308(b) of the Vehicle Code, which provides for systematic inspection of non-

commercial vehicles. ***See Blouse***, ***supra*** (compelling interest of state in protecting its citizens from harm of unsafe vehicles occupying roadways outweighs privacy interest of individual).

In ***Petroll***, ***supra***, the Supreme Court concluded that section 4704 must be read in the context of the rest of the Chapter 47 provisions relating to inspection of vehicles and that it authorizes inspections to discover ongoing violations in order to prevent future harm. The Court specifically noted that the provision does not grant police unlimited discretion to search a driver or vehicle for evidence of a crime. Subsection 4704(a)(2) authorizes police and officials "engaged in a systematic inspection program" to inspect vehicles, drivers, documents, equipment, and load to ascertain compliance with the Pennsylvania Department of Transportation regulations. 75 Pa.C.S.A. § 4704(a)(2). The same rationale applies to section 6308(b) of the Vehicle Code, as amended, 75 Pa.C.S.A. § 6308(b).

Notably, in 1985, while the ***Tarbert*** case was pending in this Court, the legislature amended the statutes pertaining to both non-commercial and commercial vehicles.[5] ***See*** 75 Pa.C.S.A. § 6308(b) (as amended 1985, June

---

[5] This Court's decision in ***Commonwealth v. Tarbert***, 502 A.2d 221 (Pa. Super. 1985), was filed on December 6, 1985. We held, on independent state constitutional grounds, that, absent probable cause or a reasonable suspicion that a crime has been or is being committed, stopping all vehicles travelling on a public highway, pursuant to a police roadblock, violated an individual's right to be free from unreasonable search and seizure. ***Tarbert***, 502 A.2d at 224-25. In the 1985 amendments to the Vehicle Code, the General Assembly added subsection (a)(2), explicitly authorizing a "police officer . . . engaged in

19, P.L. 26, No. 20, § 10, effective in 60 days) (authorizing "systematic vehicle inspection programs," and giving authority to police officers who are "engaged in a systematic program of checking vehicles or drivers to stop a  vehicle . . . for the purpose of checking the vehicle's registration . . . or [a] driver's license . . ." without the requirement of articulable and reasonable grounds to suspect a violation of the Code); *see also* 75 Pa.C.S.A. 4704(a)(2) (as amended 1985, June 19, P.L. 49, No. 20, § 5, effective in 60 days) (authorizing police and officials "engaged in a systematic inspection program" to inspect vehicles, drivers, documents, equipment, and load to ascertain compliance with Pennsylvania Department of Transportation regulations). These statutory amendments provided the authority for warrantless systematic inspections or checkpoints, of both commercial and non-commercial vehicles, and our Supreme Court's subsequent 1987 decision in *Tarbert*, and its 1992 decision in *Blouse*, set forth guidelines to assure that the inspection programs provide a constitutionally adequate substitute for a warrant.  *See Burger*, *supra*.

In my opinion, the statutory language, the interests promoted, and the evils to be addressed by section 4704(2) and section 6308(a)(2) are identical.

---

a systematic program of checking vehicles or drivers" to stop a vehicle upon request or signal to "secure such other information as the officer may reasonably believe to be necessary to enforce the provisions" of the Motor Vehicle Code.  *See* 1985, June 19, P.L. 49, No. 20, § 5, effective 60 days. Prior to 1985, the Vehicle Code did not specifically authorize such systematic roadblocks.  The Supreme Court's decision in *Tarbert*, affirming this Court, acknowledged that the roadblock in effect pre-1985 was not statutorily authorized, and thus the roadblock stop as to defendant Tarbert was unlawful. "The illegality arose because the exercise of the police power therein exceeded the statutory parameters then in force."  *Tarbert*, 535 A.2d at 1045.

Both commercial and non-commercial vehicles are heavily regulated, and thus both fall within an exception to the warrant requirement. I would find, then, that the Commonwealth's argument is unpersuasive; the fact that commercial vehicles fall within the heavily regulated industry exception to the warrant requirement does not necessarily preclude a finding that the **Tarbert**/**Blouse** guidelines apply, and I see no reason to exempt systematic commercial vehicle inspections from those standards. Administrative searches without a warrant are permitted when there is substantial government interest, the search is necessary to further the regulatory scheme, and the inspection program provides a constitutionally adequate substitute for a warrant. **Tarbert**, **supra**; **Blouse**, **supra**. It is significant to note that the underlying principles of the **Tarbert**/**Blouse** guidelines, and the **Burger** requirements for administrative warrantless searches in a closely regulated industry, are compatible; most critically, both mandate *limits on the discretion of inspecting officers, the key factor missing here.*

In my view, the **Tarbert**/**Blouse** guidelines provide a practical framework for ensuring that the inspection program provides a constitutionally adequate substitute for a warrant. And, as our Supreme Court has stated in **Tarbert** and in **Blouse**, "[s]ubstantial compliance with the guidelines is all that is required to reduce the intrusiveness of the search to a constitutionally acceptable level." **Tarbert**, 535 A.2d at 1043; **Blouse**, 611 A.2d at 1180. **See also Commonwealth v. Worthy**, 957 A.2d 720 (Pa. 2008); **Commonwealth v. Yastrop**, 768 A.2d 318 (Pa. 2001); **Garibay**, **supra**.

- 10 -

I also find unconvincing the Commonwealth's argument that because the *Tarbert*/*Blouse* guidelines preclude a physical search of the vehicle or its occupants and reference intoxicated drivers that they, therefore, do not apply to commercial vehicle inspections. The guidelines are easily adapted to non-DUI checkpoints, as illustrated in *Garibay*, and to commercial vehicles, as here. The critical concern is that the inspection be systematic, non-arbitrary, and not left to the discretion of the inspecting officers. As our Supreme Court stated in *Tarbert*, "[s]ubstantial compliance with the guidelines is all that is required to reduce the intrusiveness of the search to a constitutionally acceptable level." *Tarbert*, 535 A.2d at 1043.

For these reasons, I would find the *Tarbert*/*Blouse* standards applicable to systematic inspections for commercial vehicles. Here, the systematic vehicle inspection program was required to comply with the provisions of the Vehicle Code, which authorized the inspection for compliance with its mandates. A lawful administrative search, conducted in accordance with section 4704 and the *Tarbert*/*Blouse* guidelines, would not offend Article I, Section 8 of the Pennsylvania Constitution, and the fruits of the search would be admissible.

I would also find that the record supports the suppression court's finding that the inspection program did not comply with *Tarbert*/*Blouse*. Here, the court examined each of the *Tarbert*/*Blouse* factors, and it made specific findings that the Commonwealth offered no evidence or testimony with respect to three of the five standards. In particular, the court found the

Commonwealth did not establish sufficient warning of the existence of the checkpoint. Additionally, the choice of time and place for the checkpoint must be based on local experience as to the particular reason for the checkpoint. *See Worthy*, *supra*. Finally, and of particular concern, Trooper Beaver's testimony as to how officers determined which vehicles to stop at the checkpoint did not support a finding that the procedure followed objective standards. Instead, the procedure he described allowed for officer discretion. The procedure permitted each of the officers to perform inspections and, when available, the officer could inspect the next truck that entered the landfill. In other words, if all of the officers on the team were occupied with inspections, one truck, or many, could enter the landfill without inspection. Absent an objective standard by which the officers stopped the trucks, stops could feasibly be left to an officer's "unfettered discretion." *Worthy*, 957 A.2d at 725 (discussing *Tarbert*, *supra*, and *Blouse*, *supra*). I find this is a clear violation of the *Tarbert*/*Blouse* requirements.

In conclusion, I would find the *Tarbert*/*Blouse* standards apply to commercial vehicle checkpoints, and the record supports the suppression court's finding that the inspection here was not in substantial compliance with those standards. *Guzman*, *supra*. Thus, the stop of Maguire's vehicle was unlawful. I would affirm the suppression court's order.