590 A.2d 342

COMMONWEALTH of Pennsylvania

v.

J.F. LOMMA, INC., Appellant.

Superior Court of Pennsylvania.

Argued Jan. 10, 1991.

Filed May 2, 1991.

C. William Shilling, Pottsville, for appellant.

Frank M. O'Neill, Asst. Counsel, Timothy P. Wile, Asst. Counsel-in-charge of Appellate Section, Harold H. Cramer, Asst. Chief Counsel, John L. Heaton, Chief Counsel, Scranton, for the Com., appellee.

Before WIEAND, MONTEMURO and HESTER, JJ.

WIEAND, Judge:

J.F. Lomma, Inc. (Lomma) was tried de novo in the Court of Common Pleas of Pike County and was found guilty of violating the provisions of 75 Pa.C.S. § 1575 after its employees had operated tractor trailers in violation of conditions contained in special permits authorizing the hauling of loads in excess of statutory maximum width and weight limitations. Post-trial motions were denied, and Lomma was sentenced to pay fines totalling $6,735, together with the costs of prosecution. On direct appeal from the judgment of sentence, Lomma asks that we review:

1. WHETHER THE COURT BELOW ERRED IN FINDING THAT THE COMMONWEALTH DID NOT NEED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT KNEW OR HAD REASON TO KNOW ITS VEHICLES WOULD BE OPERATED IN VIOLATION OF THE MOTOR VEHICLE CODE IN ORDER TO BE FOUND GUILTY OF VIOLATING 75 Pa. C.S.A. § 1575?

2. WHETHER THE COURT BELOW ERRED IN FINDING THAT J.F. LOMMA, INC. COULD BE FOUND GUILTY OF OPERATING ITS TRUCKS IN VIOLATION OF 75 Pa. C.S.A. § 4921(a) and § 4941(a) WHEN THEY HAD A VALID SPECIAL HAULING PERMIT WHICH HAD BEEN ISSUED BY PENNDOT, AND THAT, AT MOST, THEIR DRIVERS HAD ONLY VIOLATED A REGULATION GOVERNING SPECIAL PERMITS AND NOT THE ACT ITSELF?

3. WHETHER THE COURT BELOW ERRED IN ALLOWING THE COMMONWEALTH TO AMEND THE

CITATIONS ISSUED TO J.F. LOMMA, INC. SUCH THAT THE CHARGE AGAINST J.F. LOMMA, INC. WAS CHANGED FROM A VIOLATION OF A SPECIFIC SECTION OF THE MOTOR VEHICLE CODE TO A GENERAL SECTION OF THE MOTOR VEHICLE CODE?

4. WHETHER THE COURT BELOW ERRED IN FINDING THAT THE COMMONWEALTH DID NOT NEED TO SUBMIT EVIDENCE AND PROVE BEYOND A REASONABLE DOUBT AS TO THE TIME WHEN SUNSET OCCURRED ON THE DATE OF THE ALLEGED VIOLATIONS IN ORDER TO SUSTAIN THE COMMONWEALTH'S ALLEGATIONS THAT THE VEHICLES WERE OPERATED AFTER SUNSET IN VIOLATION OF A REGULATION GOVERNING THE SPECIAL HAULING PERMITS?

Because we find the first two of these issues to be dispositive, we reverse the judgment of sentence and discharge appellant.

The facts underlying appellant's conviction were summarized briefly by the trial court as follows:

The Defendant requested and obtained two special hauling permits from the Pennsylvania Department of Transportation (PennDOT) for the transport of two overweight and overwidth loads. Part of the approved routes for those permits included Interstate 84. A condition of those permits was that they were valid only until sunset. On January 9, 1989, at some time between 5:00 PM and 5:45 PM, the two trailers entered a Weigh Station located on Interstate 84 in Palmyra Township, Pike County. At that time the vehicles weighing 98,162 pounds, and 87,541 pounds respectively and in excess of eight feet in width were cited for violation of sections 4921(a) and 4941(a) of the Pennsylvania Vehicle Code 75 Pa. Cons. Stat. Ann. 4921(a).

Appellant was found guilty by a District Justice of violating the maximum vehicle width and weight requirements established at 75 Pa.C.S. §§ 4921(a) and 4941(a). A sum-

mary appeal was then taken to the Court of Common Pleas of Pike County, where, at the trial de novo, the Commonwealth was permitted to amend the citations against appellant to allege a violation of 75 Pa.C.S. § 1575.

The provisions of 75 Pa.C.S. § 1575 are as follows:

### § 1575. Permitting violation of title

(a) General rule.—No person shall authorize or permit a motor vehicle owned by him or under his control to be driven in violation of any of the provisions of this title.

(b) Penalty.—Any person violating the provisions of subsection (a) is guilty of the same offense as the driver of such vehicle and subject to the same penalties including any suspension or revocation of the operating privilege or the assessment of points.

The trial court determined that because Lomma was a corporation, the Commonwealth was not required to prove beyond a reasonable doubt that it had authorized its employees to violate the statute or that it had reason to know that its employees would commit such violations. Appellant contends on appeal that this was error. In the absence of such evidence, it argues, the Commonwealth failed to prove criminal responsibility. We agree.

In *Commonwealth v. Tharp*, 373 Pa.Super. 285, 541 A.2d 14 (1988), the Superior Court held that "section 1575(a) requires the giving of authorization for one's car *to be driven in a manner violative of the Motor Vehicle Code.*" *Id.*, 373 Pa.Superior Ct. at 290–291, 541 A.2d at 17. The Court reasoned that:

A common-sense reading of section 1575(a) leads to the inescapable conclusion that some level of knowledge is necessary. To whom does its prohibition apply? The owner of a vehicle, or the person under whose control the vehicle is. What must such a person not do? Authorize or permit. Authorize or permit whom? Another. To do what? To drive the owner's vehicle. To drive how? In violation of the Motor Vehicle Code. The giving of authorization or permission must either be an affirmative act or a knowing accession. It is clear, then, that, at the minimum, the owner must know he is authorizing or

permitting and that this authorization or permission is specific to another's operation of his vehicle.

. . . .

It is not per se illegal for a vehicle owner to allow someone else to drive his vehicle. Therefore, if the giving of such permission is to be a culpable act, it must have some relation to the conduct authorized. There must be some nexus between the giving of permission by the owner and the later violation of the Motor Vehicle Code by the driver. To interpret this statute to encompass all later acts of an authorized driver, regardless of the ability of the vehicle owner to know or to foresee such actions, would be contrary to the mandate contained in the Statutory Construction Act.

Section 1922. In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

1 Pa.C.S. § 1922(1).

. . . .

Because we believe the intent of the statute is to sanction those owners who knowingly allow their vehicles to be driven illegally, we must conclude that, just as this Commonwealth recognizes a presumption that all persons obey the law, *Horan v. Weiler & Ellis*, 41 Pa. 470 (1862), a vehicle owner giving permission for another to drive his vehicle is entitled to presume that that driver will obey the law. By extension, then, the owner enjoys a presumption that his giving of permission is lawful and the Commonwealth must prove beyond a reasonable doubt that this was not so. Only when the owner, at the time he gives permission, or, if present during the permitted operation of his vehicle by another, knows or has reason to know or suspect that the driver will not obey the law is

this presumption rebutted. The measure of an owner's culpability under section 1575(a) is the conduct he authorized; permission is related to the time it was given and cannot be all-encompassing. To construe this section otherwise is clearly beyond the reach and intent of the statute.

As is fitting and proper, the owner is presumed to be innocent of allowing his vehicle to be driven in violation of the Motor Vehicle Code until proven guilty. It follows that such an owner must have some knowledge of the manner in which his vehicle will be driven to be guilty of allowing its use in violation of Title 75. Similarly, if permission once given is revoked or extinguished, or the scope of the permission is exceeded by the driver, the owner may not be held responsible for that driver's later acts. To tie previously given lawful permission to an unknowable or unforeseeable after-the-fact occurrence is too tenuous a relation to satisfy the Commonwealth's burden of proof under section 1575(a).

*Commonwealth v. Tharp, supra,* 373 Pa.Superior Ct. at 291–293, 541 A.2d at 17–18.

The trial court in the instant case attempted to distinguish *Tharp.* It presumed that because the drivers were employees of Lomma, the employer had a right to control the performance of its employees and, therefore, was criminally liable for violations committed by such employees. It found the right of control particularly compelling in view of the fact that the employer had obtained a special permit which required it to adhere to the conditions imposed thereby. The Commonwealth argues, therefore, that the employer can be found criminally liable for the acts of its employees, whether or not the employer has knowledge of such violations. In other words, argues the Commonwealth, the employer should be held strictly liable criminally according to principles of respondeat superior.

In general, the criminal liability of corporations is defined at 18 Pa.C.S. § 307(a) and (b) as follows:

### § 307. Liability of organizations and certain related persons

(a) Corporations generally.—A corporation may be convicted of the commission of an offense if:

(1) the offense is a summary offense or the offense is defined by a statute other than this title in which a legislative purpose to impose liability on corporations plainly appears and the conduct is performed by an agent of the corporation acting in behalf of the corporation within the scope of his office or employment, except that if the law defining the offense designates the agents for whose conduct the corporation is accountable or the circumstances under which it is accountable, such provisions shall apply;

(2) the offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or

(3) the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

(b) Corporations, absolute liability.—When absolute liability is imposed for the commission of an offense, a legislative purpose to impose liability on a corporation shall be assumed, unless the contrary plainly appears.

18 Pa.C.S. § 307(a) and (b). The alleged offense in the instant case was specifically in authorizing or permitting another to operate a vehicle in violation of the Vehicle Code.

The Commonwealth relies upon the decision of the Commonwealth Court in *Waste Conversion, Inc. v. Commonwealth*, 130 Pa.Cmwlth. 443, 568 A.2d 738 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990), where it was held that a corporation was strictly liable for unauthorized dumping of solid waste under section 610(8)(i) of the Solid Waste Management Act.[1] There the dumping

---

1. Act of July 7, 1980, P.L. 380, No. 97, § 610, as amended, 35 P.S. § 6018.610(8)(i).

had been done by a truck driver who had been hired as an independent contractor. The Commonwealth Court reasoned:

> By undertaking the responsibility to dispose of waste, Appellant has assumed the duty to ensure that it is completed as required by the Act. Appellant cannot absolve itself of this responsibility by transferring it to independent contractors and claiming that it has no control over them. We hold that, because Appellant has assumed responsibility in the waste disposal process, Appellant maintains control of the independent contractors it hires for the purpose of its waste disposal duties. Appellant's failure to maintain control cannot be used as a defense to avoid liability.

*Id.*, 130 Pa.Cmwlth Ct. at 449–450, 568 A.2d at 742.

However, by its express terms the Solid Waste Management Act contains a specific legislative intent to impose absolute criminal liability for violations, as well as an expressed legislative intent to impose such liability on corporations.[2] As we have already observed, 75 Pa.C.S. § 1575, the

---

**2.** Section 606 of the Solid Waste Management Act provides in relevant part:

> (b) Any person other than a municipal official exercising his official duties who violates any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall be guilty of a misdemeanor of the third degree and, upon conviction, shall be sentenced to pay a fine of not less than $1,000 but not more than $25,000 per day for each violation or to imprisonment for a period of not more than one year, or both.

. . . .

> (i) With respect to the offenses specified in subsections (a), (b), (c) and (f), it is the legislative purpose to impose absolute liability for such offenses. However, a generator who has complied with section 403 shall not be held criminally liable under this section if wastes have been transported in compliance with all applicable provisions of this act and the regulations promulgated and licenses issued thereunder, and provided that such wastes have been accepted by a facility designated in accordance with section 403(b)(6).

> (j) With respect to the offenses specified in subsections (a), (b), (c), (d), (e), (f) and (g), it is the legislative purpose to impose liability on corporations.

35 P.S. § 6018.606(b), (i) and (j) (footnote omitted).

statute under which appellant was prosecuted, requires specifically that a vehicle owner knew or should have known that an authorized operator of the owner's vehicle would violate provisions of the Vehicle Code. *Commonwealth v. Tharp, supra.* See also: *Wertz v. Kephart,* 374 Pa.Super. 274, 283–284, 542 A.2d 1019, 1024 (1988). Section 1575, therefore, cannot be construed as imposing absolute liability upon vehicle owners for the conduct of their employees.

The Commonwealth's reliance upon *Commonwealth v. Penn Valley Resorts, Inc.,* 343 Pa.Super. 387, 494 A.2d 1139 (1985), is also misplaced. There, a corporate defendant had been found guilty of involuntary manslaughter in connection with the death of a minor because of conduct by its president in serving alcoholic beverages to a visibly intoxicated minor during a corporate function. It does not follow that a corporation is criminally liable for the misconduct of all employees during the course of their employment. Rather, a corporation, pursuant to 18 Pa.C.S. § 307(a)(3), is liable for the criminal acts of a " 'high managerial agent' who commits a wrongdoing in the scope of his office." *Commonwealth v. Penn Valley Resorts, Inc., supra,* 343 Pa.Superior Ct. at 393, 494 A.2d at 1142. This is so regardless of whether the corporation itself actually " 'condoned, sanctioned or recklessly disregarded' " the actions of its high managerial agent. *Id.* In the instant case, the alleged criminal violation had been committed by drivers employed by appellant, and not by corporate officers who could be characterized as "high managerial agents" under 18 Pa.C.S. § 307(a)(3).

■ Section 1575 of the Vehicle Code does not compel different treatment of corporate offenders as opposed to individual offenders. In either case the Commonwealth is required to prove beyond a reasonable doubt that the vehicle owner knew or had reason to know that the owner's vehicle would be operated in a manner that violated provisions of the Vehicle Code. Instantly, the Commonwealth did not meet this burden. A review of the evidence produced at trial discloses not even a suggestion that appellant directed or had reason to know that its drivers would

operate its trucks in a manner inconsistent with the provisions of the Vehicle Code or in violation of the conditions imposed by the special hauling permits granted by the Commonwealth.

We also find merit in appellant's contention that its drivers violated only a Department of Transportation regulation governing special permits and not the provisions of the Vehicle Code which establish width and weight limits for vehicles. Appellant's trucks were authorized by special permit to carry loads in excess of the width and weight limits set forth in 75 Pa.C.S. §§ 4921(a) and 4941(a). The loads carried by appellant's trucks conformed in both width and weight to that allowed by the special permits. However, the special permits, pursuant to a Department of Transportation regulation, prohibited trucks carrying such loads from being operated between sunset and sunrise. 67 Pa.Code § 179.10(7)(i)(A). Because the vehicles were authorized by special permit to carry excess loads, the vehicles did not violate 75 Pa.C.S. §§ 4921(a) and 4941(a). The fact that the PennDOT regulation regarding restricted travel periods was violated did not mandate that appellant receive the same penalties applicable to drivers who, without permission, were carrying excess loads. Here, the danger to Pennsylvania highways by overweight trucks was not a consideration, for appellant had been authorized specifically by permit to carry such loads. If appellant's employees violated the conditions of the permit by operating loaded trucks after sunset, the penalty established by regulation was the confiscation of its permits. See: 67 Pa.Code § 179.16(a)(3). It is only if a vehicle "is found to be operating off the approved route indicated in the permit, [that] the amount of overweight is determined as if there were no permit." 67 Pa.Code § 179.16(b)(2). See also: *Commonwealth v. Liver*, 360 Pa.Super. 205, 520 A.2d 56 (1987). Instantly, the evidence was undisputed that appellant's drivers had been operating its vehicles on an approved route when the citations were issued.

The decision of the Supreme Court in *Commonwealth v. Austin*, 500 Pa. 620, 459 A.2d 336 (1983), is instructive.

There the defendant also had obtained a permit to haul an oversized and overweight load. In hauling the load, however, he violated PennDOT regulations regarding pilot cars, 67 Pa.Code § 179.10(13), and the display of a sign indicating an oversize load, 67 Pa.Code § 179.10(15). In addition to a fine for violating the PennDOT regulations, the defendant was assessed a fine of $20,400 for carrying an overweight load in violation of 75 Pa.C.S. § 4941(a). The Supreme Court vacated the conviction for violating section 4941(a) of the Vehicle Code. It held that the defendant's violation had been of a PennDOT safety regulation and did not trigger the penalties applicable to an overweight vehicle which had no permit. The Court reasoned as follows:

The legislature in enacting chapter 49 of the [Vehicle] Code addressed several different objectives and prescribed different penalties to accomplish those objectives.

Subchapter C, addressed to maximum weight limitations, provides a graduated scale of fines for violations, the purpose being the prevention of highway damage by unlicensed and unsupervised overweight users. The large fines under this subchapter are not only deterrents but reimbursement for damage. Subchapter C does not address the occasion when permits are issued allowing for excessive weight. Permits are provided for in subchapters A & D. Subchapter A provides for safety regulations during the uses permitted, and subsection 8 of regulation 51.10 *supra* provides for the automatic invalidation of an issued permit if any of the regulations are violated.

There is a vast difference between a permit invalidated for safety violations and no permit at all. Appellant obtained a permit by posting a bond guaranteeing against the damage the regulation is designed to prevent. His violation was against the safety regulations, not against the provisions aimed at regulating weight and preventing damage to the highway. To inflict a penalty for a violation already provided against by appellant's bond is a harsh penalty and can be supported only by the clearest provision. The penalty under subchapter A for violation

of the safety regulations is a $50.00 fine, and the invalidation of the permit and possible prescription against future applications. The loss of a permit in mid-transit would itself be no small penalty to one who might thus be grounded with an unmovable load. The different penalties provided by the PennDOT regulation address different objectives, each designed to punish and prevent different wrongs. We hold, therefore, that the automatic invalidation of a permit by violation of the safety regulations is a penalty in and of itself and does not trigger all the penalties possible under the regulations.

*Commonwealth v. Austin, supra,* 500 Pa. at 622–623, 459 A.2d at 337–338 (footnotes omitted).

Similarly in the instant case, a fine for operating overweight vehicles without a permit was improper. Appellant had obtained a special hauling permit for the load its trucks were carrying; and, therefore, the dangers of unsupervised, overweight trucks were not present. As such, the deterrents for overweight and oversized trucks were not applicable. Appellant's alleged violation pertained only to a PennDOT safety regulation defining restricted periods of travel.

The judgment of sentence is reversed, and appellant is discharged.