606 A.2d 500

**COMMONWEALTH of Pennsylvania**

v.

**Jay Edward POLLOCK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 10, 1991.

Filed April 3, 1992.

■■■■■■

Alfred Jones, Jr., State College, for appellant.

Philip L. Zulli and Timothy P. Wile, Asst. Dist. Attys., Harrisburg, for Com., appellee.

Before OLSZEWSKI, HUDOCK and BROSKY, JJ.

OLSZEWSKI, Judge.

This is an appeal from a judgment of sentence entered by the Court of Common Pleas of Dauphin County after the court found appellant guilty of violating § 4901(a)[1] and § 4941(a)[2] of the Motor Vehicle Code, 75 Pa.C.S. § 101, *et seq.* We agree with the judgment and, therefore, affirm.

Before delving into the issues of the case, its procedural history deserves close scrutiny. We recognize a number of procedural improprieties that were committed at the trial level. The pertinent facts and the procedural posture of the case are as follows.

On March 21, 1990, appellant Jay Pollock was driving a tractor and lowboy trailer upon which he carried another vehicle. A traffic problem resulted on Route 322 in Dauphin County when Pollock's vehicle had difficulty passing under an overpass. A police officer who was called to the scene of the problem directed appellant to move his vehicle to a location in Susquehanna Township. There, the officer measured the vehicle and found that it was ten inches over the permissible height.[3] The officer at that point found

1. General rule.—It is unlawful for any person to drive or move, or for the owner to cause or permit to be driven or moved, on any highway any vehicle or vehicles of a size or weight exceeding the limitations provided in this chapter or any vehicle or vehicles which are not so constructed or equipped as required in this title or the regulations of the department.
   75 Pa.C.S.A. § 4902(a) (Purdon 1977).

2. General rule.—No vehicle shall, when operated upon a highway, have a gross weight exceeding 73,280 pounds, and no combination driven upon a highway shall have a gross weight exceeding 80,000 pounds,....
   75 Pa.C.S.A. § 4941(a) (Purdon 1991).

3. Pollock's hauling permit allowed his vehicle to be 162 inches. The officer measured the vehicle at 172 inches.

that Pollock's permit was invalid because it exceeded the height limitation stated in the permit. The officer called the State Police Special Weights and Measures Team which weighed appellant's vehicle and found that it weighed 149,-350 pounds, or 144,869 pounds after a three percent allowance for error. This was over the 80,000 pound maximum allowed for such vehicles without a permit. Because Pollock's permit had been invalidated, the fine which the police imposed was based upon a weight violation in excess of the 80,000 pound limit and not the 146,000 pound limit allowed by Pollock's hauling permit.[4]

■■■ A district justice found appellant guilty of the violations charged and appellant sought a *de novo* trial in the court of common pleas. On October 17, 1990, the trial was held and appellant was found guilty. At that time, the trial court improperly rendered a verdict and sentenced appellant, although a judgment of sentence was not placed on the record. On October 25, 1990, Pollock filed post-trial motions in which he sought a new trial and to arrest judgment. The acceptable procedure would have been for the trial court to render a verdict, allow Pollock to file post-trial motions, and then pronounce sentence. *Commonwealth v. Hurst*, 367 Pa.Super. 214, 532 A.2d 865 (1987).[5] In this case, Pollock's timely post-trial motions were ruled upon by the trial court and, therefore, Pollock was not prejudiced by the simultaneous renderings. *Id.; Commonwealth v. Shinn*, 368 Pa.Super. 436, 534 A.2d 515 (1987).

**4.** We recognize that in appellant's post-trial motions at paragraph 16 and in his brief at pages six and nine, he states that the permit allowed his vehicle to weigh 156,000 pounds. We have reviewed the permit which was entered by the Commonwealth as Exhibit 1 and find that it is absolutely specific and clear that 146,000 pounds was the limit. The permit is typewritten and there is no indication, as appellant's counsel suggested to this panel at oral argument, that the figure has been written over or tampered with in any way.

**5.** In *Hurst*, this Court recognized similar errors committed by the same trial judge who ruled upon this case. In that appeal, we admonished the trial court for not conforming to procedural requirements. We now express our concern that the irregularities have continued, and remind that trial court of its obligation to follow procedural mandates.

Although notice of appeal must be filed within thirty days of sentencing, 42 Pa.C.S. § 5571; Pa.R.A.P. § 903; *Commonwealth v. Smith*, 348 Pa.Super. 10, 501 A.2d 273 (1985), and should be from final orders, 42 Pa.C.S. § 742, Pollock filed this appeal on April 16, 1991 and appealed from the order denying his post-trial motions. In instances such as this, however, where the trial court has failed to advise a convicted party of his post-trial and appellate rights as required by Pa.R.C.P. 1405, this Court has granted review. *See Commonwealth v. Eliason*, 353 Pa.Super. 321, 509 A.2d 1296 (1986), *allocatur denied*, 517 Pa. 592, 535 A.2d 81 (1987); *Commonwealth v. Hurst*, 367 Pa.Super. 214, 532 A.2d 865 (1987). In addition, there was no judgment of sentence from which Pollock could have appealed. It appears that a motion to quash the appeal was filed and denied in this case, although the record before us is devoid of any such motion. On July 8, 1991, this Court entered an order remanding the case to the trial court so that it could properly place a judgment of sentence on the docket within twenty days. We note that the trial court complied with the order insofar as it entered a judgment of sentence.[6] Now that the muddy procedural waters have been cleared, we move to the seven issues presented for our review.

■ First, appellant believes that the trial court erred in finding appellant's special hauling permit invalid. He asserts that 67 Pa.Code § 179.10(8), which subjects a permit to confiscation when the holder is operating under a violation of the permit itself or a violation of the chapter of the regulations which deals exclusively with height and weight restrictions, or invalidates the permit when the permit application contains false information, is not within the regulatory power of the Pennsylvania Department of Transportation (hereinafter "PennDOT") and is beyond legislative intent. We find that this issue is devoid of merit.

6. The trial court did not, however, comply with the twenty-day deadline and did not enter the judgment until August 26, 1991.

PennDOT derives its general rule making power from the state legislature as found in 75 Pa.C.S.A. § 6103 (Purdon 1991) which provides, in pertinent part:

(a) General rule.—In addition to the specific powers granted to the department by this title to promulgate rules and regulations, the department shall have the power ... to promulgate, consistent with and in further- ance of this title, rules and regulations in accordance with which the department shall carry out its responsibilities and duties under this title.

Further, PennDOT derives its power with respect to permits from 75 Pa.C.S.A. § 4962 (Purdon 1977) which provides, in pertinent part:

(a) General rule.—Permits may be conditioned by limiting the number of trips or establishing seasonal or other time limitations or geographic limitations including limitations as to prescribed highways *or by otherwise limiting or prescribing conditions of operation under the permits as the department or local authorities shall deem nec- essary* to protect the safety of highway users, to promote the efficient movement of traffic or to protect the high- ways.

\* \* \* \* \* \*

(c) Revocation of permit.—A permit shall be revocable for cause.

(Emphasis added.)

Pursuant to the authority granted by the legislature, PennDOT promulgated motor vehicle regulations concern- ing oversize and overweight loads and vehicles. *See* 67 Pa.Code § 179.1–179.17. 67 Pa.Code § 179.10(8) provides:

*Invalidation of permit.* The permit shall be subject to confiscation by the violation of a condition specified there- in or by the violation of this chapter. The permit shall be automatically invalidated by the giving of false informa- tion on the permit application.

When PennDOT promulgated this regulation, it was act- ing under the authority of 75 Pa.C.S.A. § 6103 and § 4962.

In addition, PennDOT was furthering the intent of the legislature when it deemed it necessary to confiscate permits when vehicles operate in violation of issued permits or of the motor vehicle regulations which deal directly with height and weight restrictions, or to invalidate permits that were obtained by use of false information. This is consistent with the legislative intent to protect the safety of highway users, promote efficient movement of traffic, and protect the highways. Height restrictions are necessary to effect all of these legislative concerns. Thus, not allowing a party to proceed under a permit when that permit runs contrary to the concerns expressed by the legislature is in the best interests of all highway users.

Our Supreme Court has been faced with the issue of PennDOT's statutory authority to promulgate 67 Pa.Code § 179.10(8). In *Austin v. Commonwealth*, 65 Pa.Cmwlth. 434, 442 A.2d 832 (1982), *rev'd on other grounds*, 500 Pa. 620, 459 A.2d 336 (1983), the Commonwealth Court ruled that § 179.10(8) had been duly promulgated. The Supreme Court, when reversing the Commonwealth Court on different grounds, did not rule that PennDOT did not have proper authority to promulgate § 179.10(8). Rather, the Supreme Court addressed the issue of "whether the regulations promulgated by PennDOT are all of a piece and whether, therefore, violation of any of the regulations precipitates the penalties available for all infractions regardless of their purpose." *Austin*, 500 Pa. at 622, 459 A.2d at 337.

In *Austin*, the Supreme Court decided that a driver who had violated PennDOT safety regulations that were not covered by his hauling permit could not have his permit automatically invalidated, despite the demands of 67 Pa. Code § 179.10(8). At that time, § 179.10(8) provided:

The permit shall be automatically invalidated by the violation of any condition specified therein, by the violation of these regulations or by the giving of false information on the application for the permit. . . .

The Supreme Court did not find that § 179.10(8) was invalid *in toto*; rather, the Court found that the section

was wrong to automatically invalidate permits when the driver was in violation of unrelated safety provisions of PennDOT's regulations. *Id.*, 500 Pa. at 623–24, 459 A.2d 338.[7] Sec. 179.10(8) was then rewritten so that it now provides for the *confiscation* of a permit if the driver is in violation of a specific provision of the issued permit or if the driver is in violation of the chapter of the regulations which deals exclusively with oversize and overweight vehicle restrictions. The section has retained the portion whereby permits are automatically invalidated if they are obtained by the giving of false information. Thus, the revised § 179.10(8) is not as broad as the § 179.10(8) which the *Austin* Court found to be offensive.

In *Austin*, the driver was in violation of a safety regulation that was not covered by his permit. In the instant case, the operator was clearly in violation of a specific provision (the height limitation) of the permit which was in his possession. Under § 179.10(8), his permit was confiscated for a "violation of a condition specified therein," not for an infraction of a safety regulation that was not included in his permit. Thus, this case is factually distinct from *Austin.*

■ As to the application of § 179.10(8) to the instant case, we find that Trooper Albert properly confiscated Pollock's special hauling permit when he measured the vehicle and determined that it exceeded the height limit that was stated on the face of the permit. Pollock was in "violation of a condition specified therein," (*i.e.*, a condition specified in the permit) and not, as was defendant Austin, in violation of an unrelated safety provision. As such, all violations which were found subsequent to the measuring

7. Chief Justice Roberts noted in his concurring opinion in *Austin,* "[T]here is no indication of a legislative intent to deem a vehicle with a *proper overweight permit* to be 'overweight' for purposes of penalty provisions merely because of unrelated safety violations." *Id.,* 500 Pa. at 624, 459 A.2d at 338 (emphasis added). This is additional indication that the instant case is distinct from *Austin.* Whereas Austin had a valid permit, Pollock never obtained a proper permit. *See infra* p. 515 (discussion of automatic invalidity of appellant's permit for supplying false information on the application).

of the truck were properly treated as being without a permit. It would have been absurd for the trooper to allow the vehicle, which was in excess of the permitted height, to proceed down the road as though the driver was still in possession of a permit. Such action (or rather, inaction) on the part of the trooper would have contravened the intent of the legislature that our highways be kept safe and traffic movement be kept efficient.

The dissent notes that there is no indication that Pollock drove his truck after the permit was confiscated and believes that only if Pollock had proceeded once his permit had been confiscated could he have been treated as if he had no permit. The dissent believes that this is the only situation in which a fine under § 4941(a) would have been proper. We do not agree. As previously stated, confiscation for a violation of the permit's height restriction was proper. At the point it was confiscated, Pollock was without a permit. Had any person at any time later attempted to drive the truck, the operation would have been without a permit. It is unreasonable to expect the police to patrol the vehicle until someone attempts to move it and only then to treat them as proceeding without a permit.

■ In addition, Pollock's permit was "automatically invalidated by the giving of false information on the permit application." The trucking company applied for a permit for the specific vehicle which Pollock later drove, and stated on the application that the vehicle was 162 inches in height. The vehicle was actually 172 inches in height; therefore, the company provided false information on the application. Sec. 179.10(8)'s use of "shall" does not make invalidation discretionary. If a permit is procured fraudulently, it is as though a permit was never, in fact, procured. Thus, Pollock's permit was automatically invalidated upon the giving of the false information and Pollock never had a valid permit. As stated by the trial court, "It would be clearly nonsensical to allege that a driver is forbidden to *begin* a trip with a particular vehicle without a valid permit, but could be allowed to *continue* one without one." Trial court

opinion at 7–8.  Accordingly, we find appellant's first issue to be without merit.[8]

▮▮▮▮ Second, Pollock asserts that Trooper Albert did not have probable cause to stop the vehicle and, as such, the results of the subsequent measuring and weighing of the vehicle were inadmissible at trial.  We find no merit in this assertion.  Articulable and reasonable grounds, rather than probable cause, are necessary to stop a motor vehicle. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Berry*, 305 Pa.Super. 8, 451 A.2d 4 (1982); 75 Pa.C.S. § 6308(b).[9]  Trooper Albert articulated

8. We must place great emphasis on the safety concerns of this state; as such, we must uphold the Motor Vehicle Code and its enforcing regulations.  We do not believe a fine such as the one imposed in this case is unreasonable when weighed against the possible damage to lives, roads, and property that could result from driving a vehicle that is too large for the road.  However, we believe the time has come for the legislature to revisit the statutes that place liability upon drivers of trucks who may not be as responsible as the owners/trucking companies.  In many instances, it is a trucking company that applies for a hauling permit, and then the driver is held responsible when his vehicle does not adhere to the permit.  Drivers may face the possibility of losing their livelihoods if they object to driving under inadequate permits, but also face stiff financial penalties if they, like Pollock, are caught driving without a valid permit.  The result is that a person who is simply trying to make a living will suffer a harsh penalty, yet the employer who forced him onto the road goes unpenalized and continues to place dangerous vehicles on our roads.

Although 75 Pa.C.S. § 1575 imposes liability upon owners who allow others to drive their vehicles when the owner is aware of a motor vehicle violation, criminal liability is difficult to prove beyond a reasonable doubt.  *See Commonwealth v. J.F. Lomma, Inc.*, 404 Pa.Super. 185, 590 A.2d 342 (1991).  Until the legislature expresses its intent to impose strict criminal liability upon the party who applies for a special hauling permit that is subsequently violated, it will remain virtually impossible to charge and prosecute corporate truck owners.

9. 75 Pa.C.S. § 6308(b) provides as follows:

Authority of police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure other such information as the officer may reasonably believe necessary to enforce the provisions of this title.

at trial that he had received a police radio message that a vehicle was causing traffic congestion. He went to the site specified in the message and found Pollock, with his vehicle already through the overpass, attempting to pull his vehicle to the side of the road. Because the vehicle was wider than the roadside, it blocked the flow of rush hour traffic. Without dwelling anymore on the facts as they relate to this issue, we find that the trial court properly found that Trooper Albert had articulable and reasonable grounds to stop Pollock and check the appropriate forms, including the special hauling permit, as authorized by 75 Pa.C.S. § 6308(b).

■ We further find that Trooper Albert did not violate Pollock's Fourth Amendment rights against unlawful search and seizure when he measured and weighed Pollock's vehicle. In line with 75 Pa.C.S. § 4981(a)[10] and *Berry*, we believe that the officers were within constitutional boundaries when they acted. The stop was based upon articulable and reasonable grounds, the governmental interest in regulating large vehicles so as to maintain safe roads outweighs appellant's privacy rights in the vehicle,[11] and the checks of the vehicle were minimally intrusive. Accordingly, the stopping, measuring, and weighing of the vehicle did not violate Pollock's Fourth Amendment rights and did not render inadmissible the evidence which resulted from the procedures.

■ Third, Pollock believes that testimony regarding the height of the overpass was hearsay and improperly admitted at trial. We find no merit in this contention. Hearsay is an out-of-court declaration that is offered to prove the truth of the matter asserted. *Commonwealth v. Coleman,*

10. 75 Pa.C.S. § 4981(a) provides, in pertinent part:
   Any police officer or qualified department employee is authorized to require the driver of any vehicle or combination to stop and submit the vehicle or combination to be measured and weighed....

11. We limit this holding to the facts of the case. Although measuring and weighing the vehicle were permissible under the Fourth Amendment, we do not believe that a full search of the vehicle would have been permissible in this case.

458 Pa. 112, 326 A.2d 387 (1974). Appellant states that evidence of the overpass height "impacts not only on the establishment of a violation of Defendant's special hauling permit but also on the probable cause to arrest Defendant and weigh his vehicle." Appellant's brief at 25. This is a concession that evidence of the height of the bridge did not go to the truth of the matter asserted (*i.e.*, height of the bridge). The testimony in question asserted that the bridge was 13'11" in height. The testimony, however, was not offered to prove the true height of the bridge but rather, as Pollock concedes, to establish that Trooper Albert had reasonable grounds to believe that Pollock's vehicle exceeded the height allowed by his hauling permit and that the subsequent measuring and weighing were justified. As such, testimony of the height of the overpass was not hearsay and was admissible.

Fourth, appellant believes that the trial court erred in admitting testimony of the steel tape measure used to measure the height of the vehicle because the tape measure had not been authenticated. We disagree. We note that evidence which a party seeks to offer at trial must be authenticated by other evidence establishing a connection between the offered evidence and the parties or events which are the subject of the litigation. *See* Packel & Poulin, *Pennsylvania Evidence* § 901 (1991). As appellant concedes, "The tape was never offered at trial." Brief for appellant at 25. Thus, there was no need to authenticate the tape.

What was offered as evidence was the testimony of Trooper Albert, the person who used the tape measure in question to check the height of appellant's vehicle. Trooper Albert's testimony of the measurement was not hearsay, as appellant might like us to believe. Trooper Albert's testimony regarding the tape measure concerned what he read (*i.e.*, personally observed) on the tape measure. The testimony did not go to the truth of the matter that the truck was 172 inches, it went to Trooper Albert's personal observations of what he saw on the tape measure when it was

extended from the top of the vehicle to the bottom of the vehicle. This does not fall within the meaning of hearsay. It was an out-of-court observation rather than an out-of-court statement, and went to the trooper's personal observations and beliefs of what he saw on the tape measure rather than to the true height of the truck. It was the duty of the fact finder to then weigh the testimony to determine what value would be afforded the observation. We conclude, therefore, that there was no need to authenticate the tape measure and there was nothing wrong with the trial court permitting testimony by Trooper Albert of what he read on the tape measure.

Fifth, appellant believes that the evidence regarding the scales used to weigh his vehicle was wrongly admitted because such evidence resulted from a reading of a scale that had been certified by the Department of General Services rather than by the Department of Agriculture as mandated by 75 Pa.C.S. § 4981(e). We believe appellant should have done his homework before presenting this Court with outdated statutory law. These responsibilities were transferred to the Department of General Services in 1986. 71 P.S. § 751–38(4).

[13] Sixth, appellant believes that the trial court erroneously admitted testimony regarding the equipment used to test the scales used to weigh the vehicle. Appellant believes that the Commonwealth should have produced certificates to show that the testing equipment was properly approved. We disagree. The scales used were certified and calibrated and the certification was properly admitted as Commonwealth Exhibit 2. This, however, is not enough for Pollock. He would like certification of the equipment used to certify the scales. But since the Commonwealth is not even required to prove the accuracy of its scales to meet its burden of proof that a weight violation occurred, *Commonwealth v. Hennemuth*, 294 Pa.Super. 360, 439 A.2d 1241 (1982), we are not willing to impose a burden upon the Commonwealth to prove the accuracy of all equipment used in the chain of testing.

■    Finally, appellant believes that Commonwealth Exhibits 2 and 3 were admitted into evidence without proper foundation.   Appellant describes Exhibit 2 as a document which PennDOT gives to recipients of special hauling permits.   Brief for appellant at 28.   We have before us the trial exhibits and Exhibit 2 is the Department of General Services scale certification.   Because there is no exhibit in the record as described by appellant, appellant's argument as to Exhibit 2 is moot.[12]

■    As to Exhibit 3, we disagree with appellant's argument that it was improperly admitted into evidence.   Appellant believes the exhibit, a copy of the application which Earthmovers, appellant's employer, filed with PennDOT in order to receive the special hauling permit, is hearsay and required the laying of a foundation as required under the business records exception to the hearsay rule.   We find that the exhibit was not hearsay because it was not offered to prove the truth of what it contained (*i.e.*, that the vehicle was the height and weight stated on the application) but was offered to prove that a certain height and weight permit was applied for by appellant's employer.   This went to the Commonwealth's core assertion that Pollock's hauling permit was invalid because false information was provided in the application.   The exhibit merely shows that the height for which Earthmovers applied was not in accord with the height which the police found the vehicle to be.   Thus, a foundation as required for hearsay exceptions was not required for the application.

For the foregoing reasons, we find appellant's arguments to be without merit and affirm the judgment of sentence.

HUDOCK, J., concurring and dissenting.

12.   The trial court noted that it was accepting the PennDOT document *conditionally* as Exhibit 2.   (N.T. 26.)   Because that document is not part of the official record, we presume that the trial court did not accept the document as a final exhibit.   Because this Court is limited to a review of the record, we accept the scale certification as Exhibit 2 in this case.

HUDOCK, Judge concurring and dissenting.

I join in the disposition of all of the issues raised on appeal save one. While I, like the majority, would affirm the judgment of sentence imposed upon Appellant for the § 4901 conviction, I respectfully dissent from the majority's affirmance of the § 4941(a) conviction. I believe the disposition of that conviction is controlled by our Supreme Court's decision in *Commonwealth v. Austin,* 500 Pa. 620, 459 A.2d 336 (1983).

In *Austin, supra,* Austin had obtained a permit to haul an oversized and overweight load, i.e., a bulldozer. In transit, however, he violated several safety regulations promulgated by PennDOT. Namely, the vehicle had not been accompanied by two pilot cars and had not displayed "OVERSIZED LOAD" placards. After Austin was cited for these violations pursuant to § 4901(a),[1] his vehicle was weighed and found to be overweight. Hence, Austin was also cited for operating an overweight vehicle pursuant to § 4941(a). Following conviction, Austin was fined $50 for the safety regulation violation and $20,400, plus costs, for the overweight violation. Commonwealth Court affirmed the judgment of sentence. Our Supreme Court vacated Austin's conviction for operating an overweight vehicle, holding:

> The loss of a permit in mid-transit would itself be no small penalty to one who might thus be grounded with an unmovable load. The different penalties provided by the PennDOT regulation address different objectives, each designed to punish and prevent different wrongs. We hold, therefore, that the automatic invalidation of a permit by violation of the safety regulations is a penalty in and of itself and does not trigger all the penalties possible under the regulations.

*Id.,* 500 Pa. at 623, 459 A.2d at 338. *See also, Commonwealth v. J.F. Lomma, Inc.,* 404 Pa.Super. 185, 590 A.2d

1. 75 Pa.C.S. § 4901(a) (Purdon 1977) prohibits the operation of a vehicle that is not equipped as required by the Vehicle Code or the regulations upon any highway of this Commonwealth.

342 (1991) (violation of safety regulations do not trigger penalties for width and weight restriction violations). The Commonwealth attempts to distinguish *Austin, supra,* from the present appeal because the latter involves a violation of a height restriction of the special hauling permit rather than a related safety regulation. I find this to be a distinction without a difference. Section 179.10(8) of the Pennsylvania Code, both as it existed when *Austin* was decided[2] and currently, includes violations of the conditions specified in the permit and the related regulations. Moreover, Austin and Appellant were both first cited for a § 4901(a) violation. Essential to the holding in *Austin* is that the automatic invalidation of a permit does not trigger all the possible penalties under the regulations. In other words, the invalid permit does not invalidate the permit *ab initio,* and, therefore, place the driver in the same position he would have been in had he never sought and received a permit.[3]

Applying the *Austin* holding to the present case, the confiscation or invalidation of a permit for a height violation does not trigger the weight regulations of the Vehicle Code as if the permit was never issued. Indeed, it is only if the vehicle "is found to be operating off the approved route indicated in the permit, [that] the amount of overweight is determined as if there were no permit." 67 Pa.Code § 179.-

**2.** At the time of the violation in *Austin,* the automatic invalidation provision was found at 67 Pa.Code § 51.10(8) and read as follows:
(8) The permit shall be automatically invalidated by the violation of any condition specified therein, by violation of these regulations or by the giving of false information on the application for the permit. Any such violation or falsification will also be grounds for refusal to issue permits on future applications.

**3.** I am not unaware of *Commonwealth v. Mercer,* 294 Pa.Super. 544, 440 A.2d 599 (1982) in which a panel of this Court found that the transport of a divisible load, rather than the non-divisible load allowed by statute, rendered the permit void *ab initio* and, therefore, upheld the overweight penalty imposed upon the defendant. Such a holding necessarily relied on the fact that a special hauling permit could not be issued to carry a non-divisible load. *See gen.,* 75 Pa.C.S. § 4961 (Purdon 1977 & Supp.1991). Thus, *Mercer* is distinguishable from the facts present in the case *sub judice.* Moreover, *Mercer* was decided before our Supreme Court's decision in *Commonwealth v. Austin, supra.*

16(b)(2).[4] *See also, Commonwealth v. Liver,* 360 Pa.Super. 205, 520 A.2d 56 (1987) (while on unauthorized highway, overweight permit holder has no greater right than operator who has no permit at all).

Given the above statutory and case authority, I cannot agree with the effect given by the Commonwealth and my colleagues to the automatic invalidation of a permit. The majority, as did the trial court, states "that it would have been absurd for the trooper to allow the vehicle, which was in excess of the permitted height, to proceed down the road as though the permit was still valid." (Majority Opinion at p. 76.) There is no indication in the record that Appellant proceeded after his permit was confiscated. Indeed, it was only at the direction of the police officer that Appellant moved his vehicle after being stopped. Thus, Appellant lost his permit in mid-transit and was "grounded with an unmovable load." *Commonwealth v. Austin, supra,* 500 Pa. at 623, 459 A.2d at 338. Had Appellant proceeded after his permit was confiscated, Appellant should have been treated as if he had no permit. It is only in this situation that the fine imposed under § 4941(a) by the trial court and affirmed by the majority would be correct.

I would affirm Appellant's judgment of sentence for the § 4901(a) conviction and vacate the judgment of sentence in regard to the § 4941(a) conviction.

---

4. 67 Pa.Code § 179.16(b)(2) reads as follows:
   (2) *Other permit violations.* If any vehicle or combination operating under a permit to exceed weight limits is found to be operating off the approved route indicated in the permit, the amount of overweight is determined as if there were no permit.